IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MEAGAN CHAMBERS HARRISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:12cv1051-CSC |
| | ) | (WO) |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*, alleging that she was unable to work because of a disability.  Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ also denied the claim.  The Appeals Council rejected a subsequent request for review.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  The parties have consented to the United States

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).³

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is "more than a scintilla," but less than a preponderance; it "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (quotation marks omitted). The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction**. The plaintiff was 27 years old at the time of the hearing before the ALJ.⁴ (R. 41). She has completed the eleventh grade, and has her general equivalency

---

³ *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

⁴ When she applied for benefits, Harrison alleged an onset date of January 1, 2005. (R. 178). At the administrative hearing, she amended her onset date to January 28, 2009. (R. 40).

3

diploma (GED). (R. 55). Her past work experience includes work as a cashier-clerk, checker, appointment clerk, and fast food worker. (R. 65). Following the hearing, the ALJ concluded that the plaintiff has severe impairments of " Bipolar Disorder, schizoaffective disorder, history of polysubstance abuse, borderline personality disorder, anxiety, neuropathy in the lower extremities and Raynaud's phenomenon." (R. 23). The ALJ concluded that the plaintiff was unable to perform her past relevant work, but, using the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P., App. 2, as a framework and relying on the testimony of a vocational expert, she also concluded that there were significant number of jobs in the national economy that the plaintiff could perform. (R. 29-30). Thus, the ALJ concluded that the plaintiff was not disabled. (R. 30).

    **B. Plaintiff's Claim**. The plaintiff presents the following issue for the Court's review. As stated by Harrison, the issue is whether "[t]he ALJ's mental residual functional capacity assessment lacks the support of substantial evidence as it is inconsistent with the opinions of both the treating psychiatrist and consulting psychologist, and [whether] these opinions were improperly rejected." (Doc. # 13 at 4).

## IV. Discussion

    A disability claimant bears the initial burden of demonstrating an inability to return to her past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3)

subjective evidence of pain and disability, e.g., the testimony of the claimant and her family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981). The ALJ must also state, with sufficient specificity, the reasons for her decision referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphases added). Within this analytical framework, the court will address the plaintiff's claim.

Harrison argues that the ALJ's residual functional capacity assessment is erroneous because the ALJ improperly rejected the opinions of her treating psychiatrist and the consultative psychologist about the severity of her limitations. In essence, the plaintiff argues that if the ALJ accepted Dr. Serravezza's assessment about her mental impairments, she would be disabled. On October 5, 2009, Dr. Serravezza completed a psychiatric evaluation form describing Harrison's mental limitations. (R. 374-76). According to Dr. Serravezza, Harrison had marked limitations in ten areas dealing with her ability to function in a work environment. (*Id*.) She had moderate restrictions in eight areas. (*Id*.) According to Dr. Serravezza, Harrison's mental impairments would be expected to last more than 12 months.

(R. 376). Dr. Serravezza added no further explanation or comments regarding her assessment. (*Id*.).

Of course, the law in this circuit is well-settled that the ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). The Commissioner, as reflected in his regulations, also demonstrates a similar preference for the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1527 (d)(2)). The ALJ's failure to give considerable weight to the treating physician's opinion is reversible error. *Broughton*, 776 F.2d at 961-2; *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982).

However, there are limited circumstances when the ALJ can disregard the treating physician's opinion. The requisite "good cause" for discounting a treating physician's opinion may exist where the opinion is not supported by the evidence, or where the evidence supports a contrary finding. *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). Good cause may also exist where a doctor's opinions are merely conclusory; inconsistent

6

with the doctor's medical records; or unsupported by objective medical evidence. *See Jones v. Dep't. of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr*, 816 F.2d at 581.

After reviewing all the medical records, the ALJ rejected the opinion of Dr. Serravezza because her treatment records do not support her assessment that Harrison suffers from marked mental limitations. (R. 28)

> The Administrative Law Judge further considered the records from Dr. Serravezza at South Central Alabama Mental Health. The Administrative Law Judge recognizes that Dr. Serravezza found the claimant exhibited marked limitations in getting along with others and maintaining concentration or completing a normal workday. The Administrative Law Judge does not give weight to that opinion because it conflicts with Dr. Serravezza's own treatment notes. The Administrative Law Judge finds it extremely significant that the records continually report that the claimant has not been compliant with her treatment.
>
> The Administrative Law Judge notes that the claimant's condition has required hospitalization in the past but there is no evidence that her condition has deteriorated to the point that she has had to be hospitalized recently. The claimant (sic) finds that if the claimant had the limiting restrictions noted by

7

>Dr. Serravezza in her residual functional capacity one would expect that she would have had to be hospitalized as in the past.  The Administrative Law Judge finds it most significant that in one of the last treatment notes the claimant reported that she had been out of medication for as long as 5 months.

(R. 28-29)

The ALJ's determination is supported by substantial evidence. On November 6, 2007, Harrison presented to the emergency room complaining of nausea and vomiting.  (R. 276).  At that time, she reported taking lithium for her bi-polar disorder.  (*Id*.)  On December 3, 2007, Harrison presented to the emergency room again.  She reported hearing voices.  (R. 273).  She also stated that she had been "off her bipolar medications for two months and that the medications that she is on which is lithium is not helping because the voices are getting worse.  She states that she prior to her pregnancy[5] was also taking Lexapro, Haldal and stopped taking them when she got pregnant." (*Id*.) (footnote added).  At that time, her appearance was appropriate; she was cooperative; her speech was normal; her mood was euthymic; her affect was congruent; she was in no apparent distress; and her thoughts were goal oriented.  (R. 286).  Her memory and insight were also good.  (*Id*.)  The level of care she needed was considered mild to moderate.  (*Id*.)

On March 27, 2008, Harrison presented to the Eastside Mental Health Clinic and reported that her medications were effective.  (R. 282).  At that time, she indicated that she was working.  (*Id*.)

On August 18, 2008, South Central Alabama Mental Health Clinic completed a yearly

---

[5] She was 38 weeks pregnant.

8

update on Harrison. (R. 309). At that time, she reported no suicidal thoughts and no depression. (*Id*.) An intake assessment was also completed. (R. 310-317). A mental status exam indicated that her dress and grooming were appropriate. (R. 311). She reported insomnia and nightmares. (*Id*.) She also reported being depressed and irritable. (*Id*.). However, her affect was appropriate and she was calm. (R. 312). She was easily distracted but her insight and judgment was adequate. (*Id*.)

Her primary therapist, Joanne Santos, noted that Harrison "returns after a lapse in services due to attending Rehab in B'ham x 8+mths noting one yr sober/clean. . . . Currently [Harrison] reports taking meds although not as prescribed to avoid running out of meds thus reducing effectiveness and increasing symptoms." (R. 318) A plan was created to provide therapy services and medication monitoring. (R. 320-321). Dr. Serravezza did not sign off on the plan.

On December 15, 2008, Harrison was anxious and agitated at her therapy session. (R. 346). Her medication levels were decreased. (*Id*.) On January 6, 2009, Harrison presented grieving the death of her grandmother. (R. 347). Harrison reported that decreasing her medications did not help so her medications were increased. (*Id*.)

On March 9, 2009, Harrison complained of "not doing well - irritable and on edge." (R. 439). Because Harrison felt her Abilify medication was causing weight gain, that medication was discontinued. (*Id*.) On June 9, 2009, Harrison reported that she had relapsed and was depressed. (R. 438). Her behavior was normal; her affect was appropriate; she was

fully alert; and her thought process was goal directed. (*Id.*) She was continued on her Haldol medication and she was restarted on Abilify medication. (*Id.*)

Harrison was seen again on July 21, 2009. (R. 437). She was "still overwhelmed" but she was "actually coping fairly well." (*Id.*) Her next appointment was scheduled in 6 months. (*Id.*)

On August 5, 2009, another yearly update form was completed. At that time, she reported depression but no suicidal thoughts. (R. 423). The assessment form noted that her hygiene was appropriate; her sleep was poor; her mood was depressed and irritable; her affect was appropriate; but she was agitated and easily distracted. (R. 425). The assessment was completed by Harrison's primary therapist, Annah Courson. (R. 433). Her treatment plan provided for therapy and medication monitoring. (R. 435-36). Dr. Serravezza did not sign off on this plan either.

On October 5, 2009, Harrison was referred for therapy because she was "having difficulty coping with daily stressors." (R. 421) Her mother had recently undergone surgery. (*Id.*) Courson noted that Harrison "continues to be overwhelmed by kids, life, mental illness." (*Id.*) She reported having family help with the children. (*Id.*) Courson noted that Harrison was compliant with her medication. (*Id.*)

On November 30, 2009, Harrison indicated that she was discouraged and overwhelmed, irritable and depressed. (R. 420). On December 28, 2009, Harrison requested "nerve medication," specifically Xanax, but it was not prescribed for her. (R. 419).

On January 5, 2010, Courson reviewed Harrison's plan and noted "minimal to poor progress." (R. 418). On March 8, 2010, Courson noted "[n]o progress or services" and indicated that Harrison had failed to return for services. (*Id.*)

It appears from the medical records that on January 22, 2010, Harrison sought treatment from Dr. J.W. Johnson, M.D. (R. 378-89). On that date, she complained of panic attacks and severe anxiety. (R. 389). She requested, and received, a prescription for Xanax. (R. 388) She was also directed to continue taking her Abilify and Lithium as prescribed by mental health. (R. 388). Dr. Johnson saw her again on February 9, 2010 and renewed her Xanax prescription. (R. 385). On April 23, 2010, Dr. Johnson noted that "I am quite sure that she told me she was taking her medicine but today, [Harrison] tells me that she has been out for 2 months and not taking any of the psychiatric medications." (R. 378). He advised her to go "back to Mental Health and to get back on her medications as soon as possible." (R. 378).

Harrison returned to South Central Alabama Mental Health Clinic on December 13, 2010. (R. 441). At that time, her behavior was normal, her affect was appropriate and she was fully alert. (*Id.*) She indicated that she was depressed and her thoughts were racing. (*Id.*) She admitted that she was recently released from jail, and had been out of medications for five months. (*Id.*)

Dr. Serravezza completed the psychiatric evaluation form on October 5, 2009. (R. 374-76). Between August 2008, and October 2009, Dr. Serravezza saw Harrison at most

11

seven (7) times for either 15 or 30 minutes.  Dr. Serravezza recommended therapy sessions as needed or every six (6) months.  (R. 347, 439, 438, 437, 421, 420, 419).[6]  Harrison's yearly assessments were not completed by Dr. Serravezza, but by her primary therapists, Joanne Santos, (R. 313), and Annah Courson, both licensed social workers.  (R. 427).  It is clear that Dr. Serravezza's interview notes reflect complaints as told to her by Harrison.  At the administrative hearing, Harrison testified that she saw Dr. Serravezza "once every three months" and she spends "at least up to an hour, but I have spent longer in there with her." (R. 57-58).  The medical records contradict Harrison's testimony regarding her treatment.

The ALJ may disregard the opinion of a physician or psychologist, provided that she state with particularity reasons therefor.  *Sharfarz v. Bowen*, 825 F.2d 278 (11th Cir. 1987). The ALJ examined and evaluated the medical records for evidence supporting Dr. Serravezza's assessment of the severity of Harrison's mental impairments.  While it is clear that Harrison suffers from mental illness, the record contains only minimal evidence, other than the plaintiff's own self-reports, of the *severity* of her impairments ascribed to her by Dr. Serravezza in her assessment of Harrison.  Dr. Serravezza rarely saw Harrison.  Her contact with Harrison was for 15 or 30 minutes.  In addition, Harrison often went months without taking her medication or participating in therapy.[7]  Based upon its review of the ALJ's

---

[6] According to Harrison's primary therapist, Annah Courson, Harrison was considered a low risk and it was recommended she be seen within 60 days.  (R. 433).

[7] Harrison complains that the ALJ's determination is not supported by substantial evidence because the ALJ relies on "records continually report that the claimant has not been compliant with her treatment." (R. 28).  Harrison argues that this statement is simply wrong and points to Courson's comment on October 5, 2009 that she was compliant with her medication.  Courson was clearly relying on Harrison's report that

decision and the objective medical evidence of record, the court concludes that the ALJ properly rejected Dr. Serravezza's opinion regarding the *severity* of Harrison's mental impairments.

The plaintiff also argues that "the ALJ's mental RFC is inconsistent with the opinion of Dr. Randall Jordan, the examining pyschologist." (Doc. # 13 at 8). In particular, the plaintiff complains that the ALJ's was selective in her reliance on portions of Dr. Jordan's opinion but failed to consider other aspects of his opinion. (*Id*.).

Dr. Jordan conducted an evaluation of Harrison on March 18, 2009. He noted that Harrison was "neatly groomed and her hygiene was good." (R. 371). "Affect was restricted but congruent with mood, which might be described as distressed and anxious, but appropriate to situation." (*Id*.) She was "oriented to person, place, time and situation." (*Id*.)

> Psychiatric: Thought processes revealed no loose associations or tangential thought. Paranoid delusions were not present but paranoid features were. Auditory and visual hallucinations were reported. She hears a "lighter" whisperer that she equates to a female and a "heavier" whisper that she equates to a male. Both are ego-dystonic. She states she constantly fights to determine reality from the whispers so there is some discriminatory ability. There were no current suicidal ideations. She has cut her wrist before and has had three inpatient hospitalizations with the last coming in Birmingham in 2008. There were no homicidal ideations. Judgment was not compromised, as claimant was able to state appropriately how to respond to common social situations such as what to do in case of fire, why we have seatbelts, etc. Insight into current functional problems might be described as good as there is understanding of symptom patterns and reasons for various interventions. Vegetative patterns involving sleep are poor for onset and maintenance. She gets usually a little over 4 hours of sleep per day. Appetite is fair.

---

she was compliant. In addition, the medical records contradict that.

> Daily Living Skills such as general cleaning and fixing light meals are not compromised by intellectual or psychological function. . . .

(*Id.*) Dr. Jordan opined as follows:

> *In terms of vocation, the claimant's ability to carry out and remember instructions of a simple, one-step nature is not compromised. She might have difficulty with complex instructions because of the chronicity of the hallucinations.
>
> *In terms of vocation, the claimant's ability to respond well to coworkers, supervision, and everyday work pressures is severely compromised secondary to psychiatric issues. She certainly needs to continue psychiatric treatment.

(R. 372).

The ALJ considered the opinion of Dr. Jordan but did not give it significant weight.

(R. 28).

> The Administrative Law Judge notes that Dr. Jordan found the claimant demonstrated no evidence of loose associations or tangential thoughts. Paranoid delusions were not present. The claimant reported that she spent her day caring for her new baby and watching television. The Administrative Law Judge recognizes that Dr. Jordan found the claimant was severely compromised in her ability to respond to work pressures. The Administrative Law Judge finds that this statement is inconsistent with Dr. Jordan's narrative report. The Administrative Law Judge further notes that Dr. Jordan found the claimant exhibited no evidence of loose associations and she is able to take care of her new baby, which is not consistent with his opinion that the claimant cannot respond to customary work pressures.

(*Id.*)

The ALJ clearly considered Dr. Jordan's opinion when she found that Harrison could "perform simple, routine tasks involving simple, short instructions and simple work-related decisions with few work place changes." (R. 25). The ALJ also found that Harrison should

14

have "occasional interaction with the general public." The ALJ's RFC is not inconsistent with Dr. Jordan's opinion.

More importantly, however, it is the ALJ's duty to determine the plaintiff's residual functional capacity based on all the evidence of record; she is not required to rely solely on a physician's assessment. "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [her] impairments. 20 CFR § 404.1545(a). Along with [her] age, education and work experience, the claimant's residual functional capacity is considered in determining whether the claimant can work. 20 CFR § 404.1520(f)." *Lewis*, 125 F.3d at 1440. The ALJ evaluated all the evidence before her which led her to conclude that the plaintiff can perform medium work with additional restrictions. It is not the province of this court to reweigh evidence, make credibility determinations, or substitute its judgment for that of the ALJ. Instead the court reviews the record to determine if the decision reached is supported by substantial evidence. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). After careful examination of the administrative record, the court concludes that the ALJ's residual functional capacity is consistent with the medical evidence as a whole as well as Harrison's testimony about her impairments and abilities. In short, the court concludes that substantial evidence supports the conclusion of the ALJ concerning Harrison's residual functional capacity to perform work.

Based upon its review of the ALJ's decision and the objective medical evidence of record, the court concludes that the ALJ properly rejected the opinions of Dr. Serravezza and

Dr. Jordan regarding the severity of the limitations caused by Harrison's mental impairments.

## V. Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled. Thus, the court concludes that the decision of the Commissioner is due to be affirmed.

A separate order will be entered.

Done this 15th day of October, 2013.

                                    /s/Charles S. Coody
                                 CHARLES S. COODY
                                 UNITED STATES MAGISTRATE JUDGE